IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN FLUKE                          :          CIVIL ACTION
                                     :
              v.                     :
                                     :
CASHCALL, INC.                       :          NO. 08-5776

MEMORANDUM

Bartle, C.J.                                     March 10, 2009

          Now pending before the court is the motion of
plaintiff, Kevin Fluke, to remand this action for lack of subject
matter jurisdiction to the Court of Common Pleas of Philadelphia
County under 28 U.S.C. § 1447(c).  Plaintiff asserts that the
jurisdictional threshold for damages has not been met under the
Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C.
§ 1332(d)(2).

          On November 21, 2008, Kevin Fluke, a citizen of
Pennsylvania, filed this putative class action lawsuit in state
court against CashCall, Inc. ("CashCall"), a California
corporation with its principal place of business there.  Fluke
seeks declaratory and injunctive relief compelling arbitration on
a class basis and monetary relief for alleged violations of the
Loan Interest and Protection Law, 41 Pa. Stat. Ann. § 201, and
the Consumer Discount Company Act, 7 Pa. Stat. Ann. § 6203.  He
claims that CashCall preys on low income, low credit score
borrowers by making loans with usurious interest rates and fees.
The class of borrowers he seeks to represent are "citizens" of

Pennsylvania who have been or are currently being subjected to unlawful interest rates and fees.

On December 12, 2008, CashCall removed the action to this court on the ground that the requirements of minimal diversity of citizenship and of the amount in controversy have been satisfied pursuant to CAFA, 28 U.S.C. § 1332(d)(2) and 28 U.S.C. §§ 1441, 1446, and 1453.  The CAFA vests original jurisdiction over class actions in the district courts where the amount in controversy exceeds $5 million exclusive of interest and costs, and where any member of the class of plaintiffs is a citizen of a state different from any defendant.  28 U.S.C. § 1332(d)(2)(A).  As noted above, plaintiff disputes that the damage threshold has been met.  The complaint states in Paragraph 24:  "Although the claims are numerous, the total aggregate dollar amount of the claims, with interest and attorneys' fees, is less than $5 million."

I.

Plaintiff seeks to represent a class of Pennsylvania citizens who obtained a loan from CashCall for less than $25,000 where the stated interest rate was greater than 6% and interest payments were made to CashCall within the last four years.  The complaint alleges CashCall charged and collected interest at the rate of 99% per annum on its loans totaling $25,000 or less.  According to Fluke, CashCall is able to collect these usurious rates of interest because it targets unsophisticated low income and low credit score borrowers.  In addition to the alleged

-2-

unlawful interest rates, Fluke complains about the $75 "loan origination fee" charged by CashCall on all loans it originates. Fluke's $2,600 loan from CashCall, which he obtained online, was subject to the $75 loan origination fee and a 99.16% APR.  He has paid $2,842.88 to CashCall in repayment but has since stopped doing so.  His claim, he maintains, is typical of the claims of the class.

In a February 19, 2009 letter to counsel for CashCall and this court, Fluke's counsel reiterated what is said in the complaint.  This letter stated that "under no circumstances will plaintiff, individually or as a class representative, claim or seek to recover more than $5 million in this action, exclusive of interest and costs."  Fluke has subsequently reaffirmed this position.[1]

---

1.  Fluke's reply to CashCall's amended opposition to the motion to remand reaffirms his position in the following paragraph:

> Plaintiff certifies and stipulates that pursuant to his Complaint and letter of February 20, 2009 [sic], the amount in controversy, individually and for the class, is less than $5 mil.  Plaintiff individually and for the plaintiff class has not, does not now, and will not in the future allege, assert, claim, seek, accept or recover in this action more than $5 mil., exclusive of interest and costs, and will be bound by this certification in federal and state court and in arbitration.

Pl.'s Reply to Def.'s Am. Opp'n to Mot. to Remand, p. 2.

II.

Under 28 U.S.C. § 1441(a), a defendant may remove, except as otherwise provided by law, any civil action brought in a State court where the district courts have original jurisdiction.  However, when jurisdiction is founded on diversity of citizenship as here, this statute "is to be strictly construed against removal."  Samuel-Bassett v. Kia Motors Am., 357 F.3d 392, 396 (3d Cir. 2004).  Congress has vested original jurisdiction in the district courts under CAFA "of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which ... any member of a class of plaintiffs is a citizen of a State different from any defendant[.]"  28 U.S.C. §1332(a)(2).  Pursuant to § 1447(c), a case may be remanded at any time before final judgment if it appears that the district court lacks subject matter jurisdiction.

In Morgan v. Gay, 471 F.3d 469 (3d Cir. 2006), our Court of Appeals outlined a roadmap for deciding amount in controversy challenges in CAFA cases after removal where the complaint expressly limits the requested relief to an amount below the jurisdictional threshold.  It explained that:

> 1) The party wishing to establish subject matter jurisdiction has the burden to prove to a legal certainty that the amount in controversy exceeds the statutory minimum; 2) A plaintiff, if permitted by state laws, may limit her monetary claims to avoid the amount in controversy threshold; and 3) Even if a plaintiff states that her claims fall below the threshold, this Court must look to see if

-4-

> the plaintiff's actual monetary demands in
> the aggregate exceed the threshold,
> irrespective of whether the plaintiff states
> that the demands do not.  Key to the present
> matter is that the plaintiff's pleadings are
> not dispositive under the legal certainty
> test.  This Court's task is to examine not
> just the dollar figure offered by the
> plaintiff but also her actual legal claims.

Id. at 475.[2]

The class action claims in Morgan asserted violations of the New Jersey Consumer Fraud Act and common law causes of action for fraud, unjust enrichment, and breach of warranties in connection with the alleged false advertising of a skin cream. Id. at 471.  The complaint sought trebled compensatory damages, punitive damages, an injunction, interest, court costs and attorneys' fees.  As here, plaintiff pleaded that the "total amount of such monetary relief for the class as a whole shall not exceed $5 million in sum or value."  471 F.3d at 472.

## III.

Under Morgan, CashCall bears the burden to prove to a legal certainty that the amount in controversy exceeds $5 million.  Fluke's averment in the complaint that the claims of the putative class fall below the $5 million statutory minimum are not conclusive.  As the Court of Appeals emphasized, "the

---

2.  Samuel-Bassett, 357 F.3d at 396, decided two years prior to Morgan, informs our analysis insofar as it adopted the "legal certainty" test for amount in controversy challenges in the removal context.  Additionally, Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007) is also informative because it confirmed that Morgan applies where, as here, the plaintiff states that the amount in controversy falls below the statutory minimum.

plaintiff's pleadings are not dispositive under the legal certainty test." <u>Id.</u>  Instead, this court must examine the actual aggregate monetary demands to determine whether they exceed the threshold, irrespective of plaintiff's assertions to the contrary.  This court's task is to scrutinize "not just the dollar figure offered by the plaintiff but also the actual legal claims asserted." <u>Id.</u>

In examining the jurisdictional issues presented by Fluke and CashCall, we are cognizant of the legislative history of CAFA to avoid "substantial, burdensome discovery."  Judiciary Committee Report on Class Action Fairness Act, S. Rep. No. 109-14, at 44 (1st Sess. 2005).  In discussing the statutory exceptions to federal diversity jurisdiction for class actions, the Judiciary Committee explained:

> [T]he Committee cautions that these jurisdictional determinations should be made largely on the basis of readily available information.  Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of theses provisions to encourage the exercise of federal jurisdiction over class actions.  For example, in assessing the citizenship of the various members of a proposed class, it would in most cases be improper for the named plaintiffs to request that the defendant produce a list of all class members (or detailed information that would allow the construction of such a list), in many instances a massive, burdensome undertaking that will not be necessary unless a proposed class is certified.  Less burdensome means (e.g., factual stipulations) should be used in creating a record upon which the jurisdictional determinations can be made.

<u>Id.</u>

-6-

In light of this warning from Congress, we will decide this motion to remand based on the information readily available to us.

According to the complaint, Fluke seeks treble the annualized interest paid in excess of 6% and treble the $75 loan origination fee for each of the proposed class members.  The Declaration of Jordana Gilden, Associate General Counsel for CashCall, states that CashCall marketed and serviced 3,618 loans to Pennsylvania consumers with principal amounts of $1,075 to $5,075 for a total principal amount of $10,616,850.  The complaint further sets forth that the annualized interest rate charged on the majority of these loans is 99% and each loan was subject to a $75 loan origination fee.  Based on these figures, Ms. Gilden concludes that the amount in controversy for the claims of the class exceeds $5 million.

In response, Fluke challenges CashCall's method of computation.  First, he contends that CashCall incorrectly calculates the amount in controversy by using the amount of loans issued to Pennsylvania "consumers."  According to Fluke, it is possible that not all of CashCall's Pennsylvania "consumers" are Pennsylvania "citizens," given that citizenship requires residency with an intent to remain indefinitely.  Krasnov v. Dinan, 465 F.2d 1298 (3d Cir. 1972).

In response, CashCall submitted another, more detailed Declaration from Jordana Gilden addressing the "consumer" versus "citizen" dispute.  Ms. Gilden asserts that she identified 3,618

-7-

consumers with Pennsylvania addresses and Pennsylvania drivers licenses.  CashCall argues that address and license information establishes evidence of citizenship.

It is well settled that "citizenship is synonymous with domicile," which is a person's "true, fixed and permanent home and place of habitation."  McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006).  In determining domicile, a court may consider the location of a person's place of residence, as well as his or her exercise of political rights, place of business, membership in unions and other organizations, and drivers' license and vehicle registration.  Id.; Krasnov v. Dinan, 465 F.2d 1298 (3d Cir. 1972).  Address and drivers' license information has been deemed sufficient for determining the citizenship of putative class members for diversity of citizenship purposes under CAFA in Fuller v. Home Depot Services, LLC, No. 07-1268, 2007 WL 2345257 (N.D. Ga. Aug. 14, 2007). Moreover, plaintiff asserts that CashCall markets its loans to "low income - low credit score borrowers."  If true, it seems unlikely that these individuals have multiple addresses, homes, or residences to complicate the citizenship inquiry.  Under the circumstances, we conclude that the address and license information is sufficient to determine to a legal certainty the citizenship of CashCall's borrowers.  Accordingly, all 3,618 consumers identified by CashCall will be considered putative class members.

-8-

Alternatively, Fluke claims that the amount in controversy is less than $5 million even assuming that all 3,618 loans were issued to Pennsylvania citizens.  He estimates his individual damages as $814.23, which includes treble the amount of excess interest over the lawful rate of 6% that he has paid to date and a 30% contingency attorney fee.  Assuming this is a typical claim, as he does, the total damages would amount to approximately $3 million (3,618 multiplied by $814.23).

However, Ms. Gilden asserts that she was able to determine that CashCall collected more than $5,000,000 in what plaintiff terms "excess interest" from Pennsylvania "citizens," which is interest above the statutory threshold of 6%.  Gilden Decl., Jan. 22, 2009, ¶ 8.  Ms. Gilden made this determination after reviewing the records of the 3,618 loans made by First Bank of Delaware to individuals with a Pennsylvania address and Pennsylvania driver's license for the class period.[3]  She calculated the interest collected by CashCall by taking the difference between the amount of interest actually paid by the 3,618 Pennsylvania citizens and the amount of interest that would have been paid on the same loan amounts and the same dates with "an interest rate such that the APR calculation yielded 6%."  See

---

3.  CashCall alleges it marketed and serviced loans for First Bank of Delaware, a bank chartered and headquartered in the State of Delaware.  See CashCall's Am. Opp'n to Mot. to Remand, p.2 According to CashCall, First Bank of Delaware sets the credit standards for the loans, performs the loan underwriting and electronically disburses the loan proceeds.  Id.  First Bank of Delaware provided Mr. Fluke with his loan.

Gilden Decl., Jan. 22, 2009, ¶ 9.  She further states that
CashCall collected more than $450,000 in loan fees.

       CashCall has established to a legal certainty through
the affidavits of Jordana Gilden, its Associate General Counsel,
that the amount in controversy, that is, the treble damages
sought for excess interest and loan fees collected from the
class, plus attorneys' fees, meets the "in excess of $5 million"
jurisdictional threshold under CAFA.  Notwithstanding what
plaintiff has pleaded in his complaint, he has failed to limit
the monetary claims on behalf of the class to $5 million or less.
Morgan, 471 F.3d 469, 475 (3d Cir. 2006).

       Based on the readily available information, this court
has subject matter jurisdiction over this action under CAFA.
Accordingly, we will deny the motion of plaintiff to remand this
action to the Court of Common Pleas of Philadelphia County.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN FLUKE                 :         CIVIL ACTION
                              :
         v.               :
                              :
CASHCALL, INC.          :         NO. 08-5776

ORDER

AND NOW, this 10th day of March, 2009, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of plaintiff, Kevin Fluke, to remand this action to the Court of Common Pleas of Philadelphia County is DENIED.

BY THE COURT:


/s/ Harvey Bartle III
                                            C.J.