IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN FLUKE                          :         CIVIL ACTION
                                     :
          v.                         :
                                     :
CASHCALL, INC.                       :         NO. 08-5776

MEMORANDUM

Bartle, C.J.                                        May 21, 2009

        On November 21, 2008, Kevin Fluke, a citizen of

Pennsylvania, filed this putative class action lawsuit in state

court against CashCall, Inc. ("CashCall"), a California

corporation with its principal place of business there.  Less

than one month later, on December 12, 2008, CashCall removed the

action to this court on the ground that the requirements of

minimal diversity of citizenship and of the amount in controversy

were satisfied pursuant to the Class Action Fairness Act ("CAFA")

of 2005, 28 U.S.C. § 1332(d)(2) and 28 U.S.C. §§ 1441, 1446, and

1453.  On March 10, 2009, we denied the motion of Fluke to remand

for lack of subject matter jurisdiction to the Court of Common

Pleas of Philadelphia County under 28 U.S.C. § 1447(c).[1]  We have

jurisdiction over this action pursuant to the CAFA.

_____

1.  On March 10, 2009, we held that CashCall established to a
legal certainty that the amount in controversy meets the "in
excess of $5 million" jurisdictional threshold under CAFA and
that plaintiff failed to limit the monetary claims on behalf of
the class to $5 million or less.

Fluke seeks declaratory and injunctive relief compelling arbitration on a class basis and monetary relief for alleged violations of the Loan Interest and Protection Law, 41 Pa. Stat. Ann. §§ 201 and 502, and the Consumer Discount Company Act, 7 Pa. Stat. Ann. § 6203.A.  He claims that CashCall preys on low income, low credit score borrowers by making loans with usurious interest rates and fees.  The class of borrowers he seeks to represent are "citizens" of Pennsylvania who have been or are currently being subjected to unlawful interest rates and fees.

Now pending before the court is the motion of CashCall to stay these proceedings and compel arbitration on an individual basis.

I.

In June of 2007, Fluke, a Pennsylvania citizen, applied online for a loan with First Bank of Delaware ("FBD"), a Delaware-chartered depository institution headquartered in Wilmington, Delaware.  See Jordana Gilden Decl. ¶ 8.  FBD is not a party to this action.  The defendant, CashCall, markets and services loans offered by federally insured banks, including FBD. It marketed and serviced the $2,600 loan issued to Fluke. Pursuant to this arrangement, FBD performed the credit scoring and underwriting of the loan, processed the loan application, and funded the approved loans, while CashCall initially marketed, advertised, and serviced the loan.  See Gilden Decl. ¶ 6.  The FBD Note explains this arrangement as follows:

-2-

CashCall, Inc. has served as the marketing
agent for First Bank of Delaware in this
transaction; however CashCall was not
responsible for and did not make any of the
credit or lending decisions. All credit and
lending decisions were made by First Bank of
Delaware and First Bank of Delaware will
originate and fund this loan.

After the loan was funded by FBD, the loan was

transferred and assigned to CashCall.  <u>See</u> Ex. B to Gilden Decl.

Before obtaining the loan, Fluke completed and

electronically signed an FBD Loan Agreement, which provides for

the application of Delaware law to any dispute arising from the

loan.  It states:

This Note, and any claim, dispute or
controversy arising from or relating to this
Note, are governed by and construed in
accordance with the laws of the State of
Delaware (without regard to its conflicts of
law rules) and applicable federal law.  The
legality, enforceability, and interpretation
of this Agreement and the amounts contracted
for, charged, and received under this
Agreement will be governed by such laws.
This Agreement is entered into between you
and me in Delaware.

The Agreement also contains the following arbitration

clause:

ARBITRATION. PLEASE READ THIS PROVISION OF
THE AGREEMENT CAREFULLY.  I UNDERSTAND THAT
UNLESS I EXERCISE THE RIGHT TO OPT-OUT OF
ARBITRATION IN THE MANNER DESCRIBED BELOW, I
AGREE THAT ANY DISPUTE WILL BE RESOLVED BY
BINDING ARBITRATION.  ARBITRATION REPLACES
THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT
TO HAVE A JURY, TO ENGAGE IN DISCOVERY
(EXCEPT AS MAY BE PROVIDED IN THE ARBITRATION
RULES), AND TO PARTICIPATE IN A CLASS ACTION
OR SIMILAR PROCEEDING.  IN ARBITRATION, A
DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD
OF A JUDGE OR JURY.  ARBITRATION PROCEDURES

       ARE SIMPLER AND MORE LIMITED THAN COURT
       PROCEDURES.  I ALSO AGREE ANY ARBITRATION
       WILL BE LIMITED TO THE DISPUTE BETWEEN MYSELF
       AND YOU OR THE HOLDER OF THE NOTE AND WILL
       NOT BE PART OF A CLASS-WIDE OR CONSOLIDATED
       ARBITRATION PROCEEDING.

       The Agreement further provides with respect to

arbitration:

       Agreement to Arbitrate. The parties agree
       that any Dispute, except as provided below,
       will be resolved by Arbitration.  This
       agreement is governed by the Federal
       Arbitration Act (FAA), 9 U.S.C.S. § 1 et seq.
       and the substantive law of the State of
       Delaware (without applying its choice-of-law
       rules).

       The Agreement gives the borrower the right to opt-out

of the arbitration agreement.  It states:

       Right to Opt Out.  I understand that if I do
       not wish my account to be subject to this
       Arbitration Agreement, I must advise you in
       writing at 50 South 16th Street, Suite 2400,
       Philadelphia, PA 19102.  I understand I must
       clearly print or type my name and account
       number and state that I reject arbitration.
       I understand that I must give written notice,
       and it is not sufficient to telephone you.  I
       understand that you must receive my letter at
       the above address within sixty (60) days
       after the date my loan funds or my rejection
       of arbitration will not be effective.

       Fluke did not opt out of the arbitration agreement.  He

proceeded to make 13 monthly payments on the loan from August of

2007 through August of 2008.  Fluke Decl. Apr. 30, 2009, ¶ 4.

These payments were deducted from his bank account at Commerce

Bank in Pennsylvania.  Id.  Fluke paid CashCall $2,842.88 as

repayment for the loan.

-4-

Initially, Fluke filed a claim on behalf of himself and all others similarly situated with the American Arbitration Association ("AAA") in October, 2008.  In a letter to the AAA, Fluke advised that CashCall and FBD were attempting to collect an unlawful debt, that Mr. Fluke had repaid the loan plus a reasonable and lawful amount of interest, and that CashCall and FBD seek interest at the usurious and unconscionable rate of 99%.  Mr. Fluke sought an accounting, a refund of the unlawfully collected interest, punitive damages, attorneys' fees, interest and costs.  In his papers filed with the AAA, he maintained that the class action waiver contained in the FBD Loan Agreement is unconscionable and unenforceable and that he cannot afford to proceed individually.  On November 13, 2008, Fluke filed an Amended Arbitration Claim with the AAA, which asked the arbitrator to determine that the class action waiver provision is unconscionable.

A few days later, on November 21, 2008, Fluke filed suit in the Court of Common Pleas of Philadelphia County.  The complaint seeks declaratory and injunctive relief compelling arbitration on a class-action basis.  According to count I of the complaint, the FBD's Loan Agreement's class-action waiver is both procedurally and substantively unconscionable under Pennsylvania law.  In this complaint, Fluke seeks to represent the following class:

> All citizens of Pennsylvania who obtained an
> unsecured consumer term loan from CashCall
> for less than $25,000 where the stated APR of

-5-

interest was greater than 6% and payments of
interest were collected by CashCall within
four (4) years from the filing of this
action.

Counts II and III of the complaint, which are brought
under the Loan Interest and Protection Law, 41 Pa. Cons. Stat.
§§ 201[2] and 502[3], and the Consumer Discount Company Act, 7 P.S.
§ 6203.A, seek relief only in the event that Fluke's claims are
decided in court, as opposed to arbitration.

II.

Both parties agree that they are required to arbitrate
their dispute.  As noted above, prior to filing suit, Fluke filed
a claim with the American Arbitration Association.  CashCall has
moved under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-
16, to stay the proceedings in this court and compel Fluke to
arbitrate his individual claim only.  Fluke opposes individual
arbitration and argues that he is entitled to represent a class
of Pennsylvania consumers who also obtained unsecured term loans
from CashCall in the arbitration proceeding.  Fluke asserts that
the court should apply Pennsylvania law which, in his view,

---

2.  41 Pa. Cons. Stat. § 201 provides:  "Except as provided in
Article III of this act, the maximum lawful rate of interest for
the loan or use of money in an amount of fifty thousand dollars
($50,000) or less in all cases where no express contract shall
have been made for a less rate shall be six per cent per annum."

3.  41 Pa. Cons. Stat. § 502 provides:  "A person who has paid a
rate of interest for the loan or use of money at a rate in excess
of that provided for by this act or otherwise by law or has paid
charges prohibited or in excess of those allowed by this act or
otherwise by law may recover triple the amount of such excess
interest or charges in a suit at law against the person who has
collected such excess interest or charges[.]"

-6-

prohibits a class-action waiver as unconscionable and unenforceable. CashCall counters that Delaware law governs this issue and that the class-action waiver contained in the FBD Loan Agreement bars Fluke from proceeding on a class-wide basis.

The role of the court is quite narrow in deciding a matter where there is an agreement to arbitrate.  Specifically, the court is limited to deciding the question of whether the parties have agreed to resolve their dispute in arbitration. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). The Supreme Court has cautioned that these "questions of arbitrability" have a "limited scope."  Id.  It explained that they include "whether the parties are bound by a given arbitration clause" and "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."  Id.  Our Court of Appeals has similarly cautioned that the district court is limited to deciding only whether there is an agreement to arbitrate and, if so, the validity of such an agreement.  Gay, 511 F.3d 369, 386 (3d Cir. 2007) (citing Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997)). If a valid agreement to arbitrate exists, the underlying dispute is left solely for disposition by the arbitrator.  Id.  Thus, we must first confine our review solely to the validity of the agreement to arbitrate.

Section 2 of the FAA provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of

-7-

such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The Supreme Court has explained that this section "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts[.]" Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006).

It is well settled that questions "concerning the interpretation and construction of arbitration agreements are determined by reference to federal substantive law." Gay, 511 F.3d at 388.  However, the Supreme Court has held that relevant state law may be applied "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996) (citing Perry v. Thomas, 482 U.S. 483, n.9 (1987)).  Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." Id.  However, arbitration agreements may not be invalidated under state laws applicable only to arbitration provisions.  Id.

In Perry, the Supreme Court explained the proper application of federal law versus state law when an agreement to arbitrate is challenged on unconscionability grounds:

> In instances such as these, the text of § 2
> provides the touchstone for choosing between
> state-law principles and the principles of
> federal common law envisioned by the passage
> of that statute:  An agreement to arbitrate

-8-

is valid, irrevocable, and enforceable, *as a matter of federal law*, [citations omitted], "save upon such grounds as exist at law or in equity for the revocation of any contract." [citation omitted].  Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.  A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. [citation omitted]. A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law.  Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable[.]

Id.

Our Court of Appeals recently addressed whether a class-action waiver in an agreement to arbitrate is unconscionable and unenforceable in G.R. Homa v. Am. Express Co., 558 F.3d 225 (3d Cir. 2009).  In Homa, the court explained that, pursuant to § 2 of the FAA and Supreme Court precedent, federal courts must look to the relevant state law of contracts when deciding whether an arbitration agreement is unconscionable.  Id. at 229.  It held that the FAA does not preempt a state law defense to the enforceability of the contract's class-action waiver based on its alleged unconscionability given that such a defense is applicable to all waivers of class-wide actions and not just those that also compel arbitration.  Id.  It further concluded that, under the governing law of New Jersey, the class-

-9-

action waiver is unconscionable "if the claims at issue are of
such a low value as effectively to preclude relief if decided
individually."  Id. at 233.

Thus, under § 2, we must look to the relevant state law
of contracts to determine whether the class-action waiver
contained in the FBD Loan Agreement's arbitration clause is
unconscionable.  Homa, 558 F.3d at 229.  As a federal court
sitting in diversity in Pennsylvania, we must apply the choice-
of-law rules of Pennsylvania in deciding whether the contractual
designation of Delaware law is enforceable.  Klaxon Co. v.
Stentor Elec. Mfg. Co., Inc., 313 U.S. 487 (1941).

Pennsylvania courts generally will apply the choice of
law agreed to by the contracting parties.  Miller v. Allstate
Ins. Co., 763 A.2d 401, 403 (Pa. Super. 2000).  However, the
Pennsylvania Supreme Court "has recognized that choice-of-law
agreements can be avoided when the terms offend Commonwealth
public policy even in disputes between contracting parties."
Pennsylvania Dep't of Banking v. NAS of Delaware, LLC, 948 A.2d
752, n.9 (Pa. 2008).  This principle is embodied in § 187 of the
Restatement (Second) of Conflict of Laws, which has been adopted
by Pennsylvania courts.  Schifano v. Schifano, 471 A.2d 839, 843
(Pa. Super. 1984); Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52,
55 (3d Cir. 1994).  Section 187 provides:

> The law of the state chosen by the parties to
> govern their contractual rights and duties
> will be applied, even if the particular issue
> is one which the parties could not have

      resolved by an explicit provision in their
      agreement directed to that issue, unless

      (a) the chosen state has no substantial
      relationship to the parties or the
      transaction and there is no other reasonable
      basis for the parties' choice, or

      (b) application of the law of the chosen
      state would be contrary to a fundamental
      policy of a state which has a materially
      greater interest than the chosen state in the
      determination of the particular issue and
      which, under the rule of § 188, would be the
      state of the applicable law in the absence of
      an effective choice of law by the parties.

Restatement (Second) Conflict of Laws § 187.

      Here, the choice-of-law provision in the contract between FBD and Fluke designates Delaware law as controlling the parties' dispute under the Note.  FBD is incorporated in Delaware and has its principal place of business there.  Thus, it cannot be said that Delaware has no substantial relationship to the parties or the transaction pursuant to subsection (a) of § 187.

      We must determine, then, whether application of Delaware law would be contrary to a fundamental policy of a state which has a materially greater interest in the determination of the particular issue and which would be the state of the applicable law in the absence of the Loan Agreement's choice of law provision.  Pennsylvania has a materially greater interest than Delaware in the resolution of this dispute.  Fluke is a citizen of Pennsylvania and he applied for and obtained the loan from FBD in Pennsylvania.  He seeks to represent other Pennsylvania citizens that also obtained unsecured consumer loans

from FBD.  The FBD Loan Agreement directs that any consumer
complaints be directed to FBD in Philadelphia, Pennsylvania.
Borrowers are also directed to write to FBD at its offices in
Philadelphia, Pennsylvania in the event they wish to opt-out of
the arbitration agreement.  CashCall deducted Fluke's monthly
payments from his bank account in Pennsylvania.  In contrast, the
only contact that Delaware has with this transaction is that FBD
is a citizen of that state.  However, as noted earlier, FBD,
which assigned the note and loan to CashCall, is no longer a
party to this transaction or dispute.

        Under Delaware law, a class-action waiver provision in
an arbitration agreement is enforceable.  Pick v. Discover Fin.
Servs., Inc., No. 00-935, 2001 WL 1180278 *5 (D. Del. Sept. 28,
2001).  In contrast, the Pennsylvania Superior Court has held
that an agreement to arbitrate in a contract of adhesion that
waives the right to class-action relief is unconscionable and
unenforceable.  Thibodeau v. Comcast Corp., 912 A.2d 874, 886
(Pa. Super. 2006).  A contract of adhesion is a "standardized
form contract presented to consumers without negotiation or any
option for modification."  Id. at 882. In reaching this holding,
the Pennsylvania Superior Court stressed that "Pennsylvania law,
like the FAA, favors arbitration."  Id. at 880.  Nonetheless,
"where the arbitration clause is contained in an adhesion
contract and unfairly favors the drafting party, such clauses are
unconscionable and must be deemed unenforceable."  Id.  The
Comcast Customer Agreement in Thibodeau, which contained an

-12-

agreement to arbitrate with a class action waiver, was unenforceable, according to the court, because it was a "contract of adhesion unilaterally imposed on all consumers." Id. at 885. The court reasoned that consumers are "subject to every term without choice[.]" Id. It explained that "Mr. Thibodeau was forced to accept every word of all 10 pages of the mass-delivered Comcast Customer Agreement or have no cable television service whatsoever, since Comcast holds a government-authorized geographic monopoly." Id. Furthermore, the class action waiver effectively precluded customers from bring suit against Comcast over disputes involving small amounts of money because of the unlikelihood of an individual expending the time and money to litigate such a small claim. Id. Thus, the clause precluding class actions was unconscionable. Id.; see also Lytle v. CitiFinancial Servs., 810 A.2d 643 (Pa. Super. 2002).

We predict that the Pennsylvania Supreme Court, in accordance with Thibodeau, would hold that Pennsylvania public policy prohibits as unconscionable absolute class action waivers in a contract of adhesion. See Franklin Prescriptions, Inc. v. New York Times Co., 424 F.3d 336, 341 (3d Cir. 2005). However, the Pennsylvania courts have not yet addressed whether a class action waiver that contains an opt-out clause, such as the one at issue here, is unconscionable and unenforceable. Fluke's loan agreement contained a provision giving him the right to opt-out of the arbitration agreement. To do so, Fluke was required to

-13-

give written notice within 60 days after the date that his loan was funded.

Although Pennsylvania courts have not yet addressed this issue, other courts have found that an agreement to arbitrate that contains an opt-out provision is not unconscionable because such agreements are not unilaterally imposed but instead give the consumer a meaningful choice as to the contract's terms.  For instance, in Guadagno v. E*Trade Bank, 592 F. Supp. 2d 1263 (C.D. Cal. 2008), the plaintiff filed a putative class-action lawsuit against E*Trade, the bank at which she held an interest-earning account, in connection with its practice of holding money withdrawn from her account for 3 days prior to sending it to the creditor she wished to pay.  E*Trade moved to compel arbitration pursuant to the account agreement's arbitration clause.

When applying for the account, the plaintiff filled out an online application, which contained an arbitration agreement with a class-action waiver provision.  Like Fluke, the plaintiff was permitted to opt-out of the arbitration agreement and class-action waiver provided she give notice within 60 days of signing the agreement.  Id. at 1268.

The plaintiff argued, among other things, that the agreement to arbitrate was unconscionable and unenforceable because it contained a class-action waiver provision.  In determining whether to enforce the agreement's choice of law provision, the court analyzed whether the application of Virginia

-14-

law would contradict a fundamental public policy of California.
Id. at 1269.  The court noted California's public policy against
exculpatory class-action waivers in contracts of adhesion but
highlighted that a contract is not an adhesive one if the
consumer has a meaningful opportunity to opt out of a term after
entering the contract.  The plaintiff was given that right but
did not exercise it.  The court concluded that "the Arbitration
clause containing the waiver was not presented on a take-it-or-
leave-it basis, but gave Guadagno sixty days to opt out" and, for
this reason, it was not unconscionable.  Id. at 1270.  Thus,
California public policy would not be offended by the application
of Virginia law.

          The court further held that the class-action waiver
provision was not unconscionable under Virginia law given that
the agreement required E*Trade to pay half of the arbitration
fees and also gave the plaintiff the opportunity to ask E*Trade
to pay a higher share of the fee.  Furthermore, the plaintiff
provided no proof that the costs of arbitration were
prohibitively expensive to her.  Id. at 1272.

          A similar result was reached in Honig v. Comcast of
Georgia I, LLC, 537 F. Supp. 2d 1277 (N.D. Ga. 2008), which
involved a claim by a Comcast customer that she was improperly
charged $16.40 without her authorization.  The Comcast subscriber
agreement contained a binding arbitration provision with a class-
action waiver.  However, the agreement also contained an opt-out
provision giving the customer the right to opt out of the

-15-

agreement to arbitrate by notifying Comcast in writing within 30 days of receiving the agreement.  Id. at 1281.

Comcast moved to compel arbitration of the dispute.  As in Guadagno, the plaintiff argued the arbitration provision was unenforceable because it contained an unconscionable class-action waiver.  According to the plaintiff, she and members of the proposed class would be precluded from meaningful relief if the court were to enforce the class-action waiver in light of the small amount in dispute and the difficulty of obtaining counsel to handle the claim.  Id. at 1286.

The court reasoned that the plaintiff's "ability to recover attorney's fees on most her claims if she prevails provides an attorney ample incentive to represent her and pursue all of her claims in arbitration."  Id. at 1288.  Furthermore, the arbitration provision provided for Comcast to advance the filing fee and costs of arbitration.  However, the most important factor in the analysis, according to the court, was the fact that the customer was "free to reject the terms of the arbitration provision without a single adverse consequence."  Id. at 1289. It concluded that her "ability to opt out of the arbitration provision dilutes her unconscionabilty argument because the provision was not offered on a take-it-or-leave-it basis."  Id. It noted that "Courts have stressed the importance of such opt-out provisions in enforcing class action waivers in arbitration agreements."  Id.

-16-

We predict that the Pennsylvania Supreme Court would agree with the reasoning of the district courts in Guadagno and Honig.  An opt-out provision, like the one in Fluke's agreement with FBD, seriously undermines a consumer's contention that the arbitration agreement is unconscionable.  Fluke was given the option to say "no" to the arbitration provision and he was given a full 60 days to do so.  In that way, he had complete control over the terms of the agreement and it cannot be said that the arbitration agreement was presented to him on a take-it-or-leave-it basis.  Furthermore, like the agreements in Guadagno and Honig, the FBD loan agreement requires that FBD pay the filing fee and any costs and fees charged by the arbitrator regardless of which party initiates the arbitration.  Moreover, under § 503 of the Loan Interest and Protection Law, a borrower or debtor who prevails in an action "shall" recover a reasonable attorneys' fee.  41 Pa. Cons. Stat. § 503.  This should alleviate any concern regarding the availability and willingness of counsel to represent him.  Accordingly, this case differs materially from Thibodeau and is more analogous to Guadagno and Honig.  We predict that the Pennsylvania Supreme Court would hold that the arbitration provision in the loan agreement in issue is not unconscionable and is enforceable.

In summary, under either Pennsylvania or Delaware law, we hold that the class action waiver with its 60 day opt-out clause, is not unconscionable under the circumstances presented

-17-

here.  Accordingly, we will enter an Order compelling arbitration
of this matter on an individual basis only.