IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN FLUKE | : | CIVIL ACTION |
| v. | : | |
| CASHCALL, INC. | : | NO. 08-5776 |

MEMORANDUM

Bartle, C.J. May 26, 2011

Before the court is the motion of plaintiff Kevin Fluke to vacate and/or modify an arbitration award made under the Federal Arbitration Act ("FAA").[1]

Plaintiff Kevin Fluke filed a putative class action lawsuit against defendant CashCall, Inc. ("CashCall") in the Court of Common Pleas of Philadelphia County. Fluke sought to recover statutory damages available under Pennsylvania law for usurious interest rates CashCall allegedly charged Pennsylvania borrowers on loans of $35,000 or less. CashCall timely removed the action based on this court's diversity jurisdiction. We have jurisdiction over this matter because Fluke, a member of the putative class, is of diverse citizenship from CashCall and the case met the requirements of 28 U.S.C. § 1332(d)(2), including the amount of more than $5 million in controversy.[2] On

---

1. At present, CashCall has not moved to confirm the award.

2. Fluke is a resident of Pennsylvania and CashCall is a California corporation with its principal place of business (continued...)

CashCall's motion, the court compelled Fluke to comply with a provision in his borrowing agreement requiring him to arbitrate his claims individually and not as part of a class. In the subsequent arbitration, the arbitrator found in favor of CashCall and against Fluke.

I.

In June 2007, Fluke, a resident of Pennsylvania, borrowed $2,600 from the First Bank of Delaware ("First Bank"). This unsecured loan was marketed to Fluke over the internet by CashCall, Inc. ("CashCall"). Under the terms of the promissory note, Fluke could repay this debt over three and a half years, that is, 42 months.[3] Of the amount borrowed, $75 was treated as a pre-paid origination fee. Thus, Fluke received $2,525 of the $2,600 he borrowed.

As required by federal law, the promissory note Fluke signed carried a Truth in Lending Act disclosure statement. See 15 U.S.C. §§ 1601-16. According to the disclosure, Fluke was to borrow $2,525.00 at an annual interest rate of 99.16% and pay a total "finance charge" (i.e., interest) of $6,596.77 over 42 months. In borrowing $2,525, Fluke would repay CashCall a total of $9,121.77. The note also contains a provision requiring Fluke

---

2.(...continued)
there.

3. Fluke would pay $244.28 in the first month, $216.55 for forty months, and $215.49 in the forty-second month. First Bank would also charge Fluke an additional $15 if a payment was more than 15 days late. The loan did not include a prepayment penalty.

to arbitrate any disputes that arise with the holder of the note individually and not as part of a class. See Fluke v. CashCall, Inc., Case No. 08-5776, slip op. at 13-14 (E.D. Pa. May 21, 2009).

After First Bank loaned the money to Fluke, First Bank assigned the promissory note to CashCall.[4] The parties agree that CashCall "serviced" the note, which appears to mean that CashCall collected Fluke's payments. Fluke paid CashCall $2,840.00 over 13 months and then ceased making payments. Of the amount Fluke paid, CashCall applied $2,659.12 to interest and $183.76 to principal. When Fluke stopped making payments, CashCall threatened a collection action.

Soon thereafter, Fluke filed this lawsuit. Fluke alleged that the interest rate that CashCall charged him and other similarly-situated borrowers violates the Pennsylvania Loan Interest and Protection Law and the Pennsylvania Consumer Discount Company Act.[5] 7 P.S. § 6203.A; 41 P.S. §§ 201, 502.

---

4. The note was clearly drafted with the intention that First Bank would lend Fluke money and then assign the note to CashCall. The note defines the "Holder" of the note as including First Bank's "marketing, servicing, and collection representatives and agents." The note specifically refers to CashCall as a "marketing agent." The note also invites borrowers to contact CashCall if it has a complaint and provides CashCall's contact information. The First Bank promissory note is dated June 27, 2007. Fluke received a notice that his debt had been assigned to CashCall on June 30, 2007.

5. CashCall has not counterclaimed to recover any money that may be due under the promissory note.

In arbitration, CashCall argued it was not liable under Pennsylvania's usury laws because federal law as set forth in 12 U.S.C. § 1831d authorized First Bank to charge an out-of-state borrower such as Fluke any interest rate that it could validly charge a Delaware borrower.[6] See generally Greenwood Trust Co. v. Massachusetts, 971 F.2d 818, 826-28 (1st Cir. 1992). The parties agreed that Delaware statutes authorize Delaware-chartered banks such as First Bank to charge a borrower any agreed-upon interest rate. See 5 DEL. CODE ANN. §§ 963, 965. Fluke countered that a 99.16% interest rate is unconscionable and therefore outside the scope of § 1831d.

The arbitrator found the 99.16% interest rate was not unconscionable under Delaware law and denied Fluke any recovery. In his motion to vacate and/or modify that award, Fluke argues that the arbitrator's decision is not supported by substantial evidence and that the arbitrator manifestly disregarded the law in performing his analysis.

---

6. Section 1831d(a) provides in pertinent part:

> In order to prevent discrimination against State-chartered insured depository institutions ... if the applicable rate prescribed in this subsection exceeds the rate such State bank ... would be permitted to charge in the absence of this subsection, such State bank ... may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest ... at the rate allowed by the laws of the State, territory, or district where the bank is located.

II.

The promissory note requires any dispute between Fluke and CashCall to be arbitrated pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq. The FAA specifies four grounds for setting aside an arbitrator's award. 9 U.S.C. § 10(a). These four grounds are:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

Id. The statute also provides three circumstances in which a court may modify or correct an arbitrator's award:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

Id. at § 11. The Supreme Court has held that § 10 and § 11 of the FAA are the exclusive grounds for vacating and modifying an arbitrator's award. Hall St. Assocs. LLC v. Mattel, Inc., 552 U.S. 579-80, 583-84 (2008).

Fluke argues that the arbitrator's award is unsupported by substantial evidence. The promissory note Fluke signed states that the arbitrator's award "will be supported by substantial evidence and must be consistent with this Agreement and applicable law or may be set aside by a court upon judicial review." Section 10(a) of the FAA does not permit a court to vacate an arbitration award on the ground that it is unsupported by substantial evidence. The Supreme Court has specifically held that contracts between litigants cannot authorize federal courts to vacate arbitration awards on this basis. Id. Thus, Fluke's argument lacks merit.

Fluke also asserts that the award at issue must be set aside due to the arbitrator's "manifest disregard of the law." Both the Supreme Court and our Court of Appeals have specifically declined to resolve whether manifest disregard of the law remains a valid basis for vacatur after the Supreme Court's Hall Street decision. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758, 1768 n.3 (2010); Paul Green, 389 Fed. App'x at 176 n.5. The Courts of Appeals for the Second and Ninth Circuits have held that an arbitrator engaging in manifest disregard of the law exceeds his or her powers within the meaning of § 10(a)(4) of the FAA. Paul Green, 389 Fed. App'x at 177 n.6;

see Comedy Club Inc. v. Improv W. Assocs., 553 F.3d 1277, 1290 (9th Cir. 2009); Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 93-95 (2d Cir. 2008), overruled on other grounds, --- U.S. ----, 130 S. Ct. 1758 (2010). On the other hand, the Courts of Appeals for the Fifth and Eleventh Circuits have taken the opposite view, that is that "manifest disregard of the law" does not survive Hall Street as a grounds for vacating an arbitrator's award. Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1324 (11th Cir. 2010); Citigroup Global Mkts., Inc. v. Bacon, 562 F.3d 349, 357 (5th Cir. 2009).

Prior to Hall Street, our Court of Appeals accepted manifest disregard of the law as a basis for setting aside an arbitration award although it has not had occasion to opine on the subject since that time. See Paul Green, 389 Fed. App'x at 176. Even if manifest disregard of the law survives under § 10(a)(4) of the FAA, it is available only in those "exceedingly narrow" circumstances in which an "arbitrator (1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it." Paul Green, 389 Fed. App'x at 176; Metromedia Energy, Inc. v. Ensearch Energy Servs., Inc., 409 F.3d 574, 578 (3d Cir. 2005). An arbitrator's manifest disregard for the law is distinct from a merely erroneous application of the law. Even an arbitrator's incorrect legal conclusion is entitled to deference. Local 863 Int'l Bhd. v. Jersey Coast Egg Producers, 773 F.2d 530, 533 (3d

Cir. 1985); see Commc'n Consultant, Inc. v. Nextel Commc'n of Mid-A., Inc., 146 Fed. App'x. 550, 553 (3d Cir. 2005). Our Court of Appeals has stated "that there must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award." News Am. Publ'ns, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990) (internal citations omitted).

Fluke's pre-arbitration memorandum explained Delaware's law of unconscionability and urged the arbitrator to find that a 99.16% interest rate is unconscionable. Citing a leading Delaware Supreme Court decision, Fluke urges that a contract is unconscionable if a party uses its superior bargaining power to obtain terms that are "so one-sided as to be oppressive." See Graham v. State Farm Mut. Auto. Ins. Co., 565 A.2d 908, 912-13 (Del. 1989).

We are constrained to find, however, that the arbitrator did not manifestly disregard the law in concluding the interest rate at issue was not unconscionable. Delaware statutes specifically authorize lenders to charge borrowers such as Fluke any agreed-upon interest rate, and Fluke cited no cases in which a Delaware court found a particular interest rate unconscionable. See 5 DEL. CODE ANN. § 965. The arbitrator did not "willfully flout" any law he was obliged to apply. Paul Green, 389 Fed. App'x at 176-77.

We are not unsympathetic to Fluke's argument that an interest rate of 99.16% is unconscionable. Yet, we may not

substitute our judgment for that of the arbitrator. See News Am. Publ'ns, 918 F.2d at 24. Assuming that a manifest disregard of the law remains a valid grounds for vacating an arbitration award, the arbitrator here did not manifestly disregard the law in denying Fluke relief. Accordingly, we cannot grant the relief Fluke seeks.